1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9

| | |
|---|---|
| ELDRED NICHOLSON, | CASE NO.    1:09-cv-01139-LJO-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT'S MOTION TO DISMISS BE GRANTED |
| v. | |
| M. LOMELI, | (ECF No. 27) |
| Defendant. | |
| _____/ | OBJECTIONS DUE WITHIN THIRTY DAYS |

10
11
12
13
14
15
16

## I.    PROCEDURAL HISTORY

Plaintiff Eldred Nicholson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before this Court is a Motion to Dismiss filed by Defendant M. Lomeli.  (ECF No. 27.)  Plaintiff filed an Opposition on June 28, 2011, and Defendant replied two days later.  (ECF Nos. 29 & 30.)

This action proceeds on Plaintiff's Complaint filed June 30, 2009.  (ECF No. 1.)  On January 14, 2011, this Court screened Plaintiff's Complaint finding that it stated a cognizable claim for relief against Defendant Lomeli for excessive use of force in violation of the Eighth Amendment.  (ECF No. 19.)

17
18
19
20
21
22
23
24
25
26
27

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## II.   __ARGUMENT__

In his Motion, Defendant Lomeli argues that Plaintiff did not exhaust his available administrative remedies before filing this action.  Defendant Lomeli highlights the fact that Plaintiff filed one grievance/appeal after the incident on November 8, 2007.  However, this appeal failed to put the prison on notice of the events or persons about which he was complaining.  On November 21, 2007, Plaintiff submitted a grievance complaining that he was improperly kept in the security housing unit ("SHU"), that his jaw was broken, and that the SHU placement was retaliatory.  (ECF No. 1, pp. 23-25; Pl.'s Compl. Ex. A.)  As relief, Plaintiff requested that "all paperwork [be] thoroughly investigated" and then provided to him.  (Id. at 23.)  This appeal was returned to Plaintiff after being rejected by the Appeals Coordinator because it was incomplete.   The rejection informed Plaintiff why it was rejected, what information needed to be provided, and reminded Plaintiff of the time constraints. (Id. at 21.)  Plaintiff did not resubmit the grievance for more than six months. (Id. at 22.)

Based on this grievance, Defendant argues that not only did Plaintiff fail to complete the grievance process, even if he had, this grievance did not alert prison officials to the nature of the wrong for which Plaintiff sought redress.

In his Opposition, Plaintiff argues that he attempted to exhaust his administrative remedies, but could not.  Plaintiff states that he filed his first appeal regarding this incident on November 21, 2007.  This appeal was returned to him by the appeals coordinator and asked for supporting documents.  Plaintiff explained to the appeals coordinator that he was trying to get the supporting documents, but the hospital limited what he could do.  Plaintiff requested interviews, wrote letters, filed 602 appeals forms, and requested the documents

2

from ICC.  Plaintiff did not receive the requested documents until June 23, 2008.  Plaintiff

states that before that he repeatedly resubmitted the November 21, 2007 appeal, which

the appeals coordinator would not process.  Plaintiff filed a second grievance on August

7, 2008, which was immediately rejected.

Plaintiff states that, after numerous attempts, he was blocked from filing a staff

complaint.  Plaintiff appears to be arguing that he should be excused from the exhaustion

requirement because of the delay or mishandling of his original appeal.

In his Reply, Defendant states that he does not dispute that Plaintiff's November 21,

2007 grievance was timely filed.  Defendant argues that the grievance did not put prison

officials on notice of Defendant's alleged misconduct which is the basis for this action.

## III.   LEGAL STANDARD

"The Prison Litigation Reform Act [("PLRA")] requires that a prisoner exhaust

available administrative remedies before bringing a federal action concerning prison

conditions."  Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. §

1997e(a)); Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter v. Nussle,

534 U.S. 516, 525 n.4 (2002)) (The PLRA "creates 'a general rule of exhaustion' for

prisoner civil rights cases.").  "'[T]he PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong.'"  Bennett v. King, 293 F.3d

1096, 1098 (9th Cir. 2002) (quoting Porter, 534 U.S. at 532); accord Roles v. Maddox, 439

F.3d 1016, 1018 (9th Cir.), cert. denied, 549 U.S. 905 (2006).  The PLRA's "exhaustion

requirement is mandatory." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per

curiam); accord Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure.").  Even if the prisoner seeks monetary or other relief that is unavailable through the grievance system in question, the prisoner must still first exhaust all available administrative remedies.  See Booth v. Churner, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").

While the PLRA requires "proper" exhaustion of available administrative remedies, Woodford v. Ngo, 548 U.S. 81, 93 (2006), it does not define the boundaries of proper exhaustion.  See Jones, 549 U.S. at 218.  Rather, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford, 548 U.S. at 90.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, 549 U.S. at 218; see, e.g., Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009, as amended June 5, 2009) (per curiam) ("The California prison system's requirements define the boundaries of proper exhaustion.") (internal quotation marks and citation omitted). Absent a prison grievance procedure mandating the naming of each individual involved, a prisoner need not identify all of the defendants later named in a lawsuit during the administrative grievance process.  Jones, 549 U.S. at 218.

The PLRA's exhaustion requirement is not jurisdictional; rather, it creates an

4

affirmative defense that a defendant may raise in an unenumerated Rule 12(b) motion. See Jones, 549 U.S. at 213-14; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003).  The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119.  Specifically, the defendant must show that some administrative relief remains available to the plaintiff "whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." Brown, 422 F.3d at 936-37.  In deciding a motion to dismiss for failure to exhaust, a court may "look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20.  When a prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120.  However, dismissal of the entire complaint is not required when a prisoner has exhausted some, but not all, of the claims included in the complaint. See Jones, 549 U.S. at 223-24.

California provides its inmates and parolees the right to appeal administratively the alleged misconduct of correctional officers and "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a), (e).  In order to exhaust administrative remedies within this system, a prisoner normally must proceed through four levels: (1) initiation of informal resolution through submission of a CDC form describing the problem and the action requested; (2) first level formal written appeal to the prison's appeals coordinator; (3) second level formal appeal to the institution's warden or designee; and (4) third level formal appeal to the CDCR Director ("Director's Level"). Id. § 3084.5; see Woodford, 548 U.S. at 90-91 (California prisoners are required to use the process established by Cal. Code

5

Regs., tit. 15 §§ 3084.1, 3084.2-3084.6 in order to satisfy 42 U.S.C. § 1997e(a)); Porter,

534 U.S. at 532 (the exhaustion requirement is mandatory and applies to all prisoner suits

relating to prison life that do not implicate the duration of the prisoner's sentence).

Where a prison's grievance procedures are silent, a prisoner's allegations will suffice

if they notify the prison of a problem as "[t]he primary purpose of a grievance is to alert the

prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin

v. Arpaio, 557 F.3d 1117, 1122 (9th Cir. 2009).   A grievance need not include legal

terminology or legal theories unless they are in some way needed to provide notice of the

harm being grieved. Griffin, 557 F.3d at 1120. A grievance also need not contain every

fact necessary to prove each element of an eventual legal claim. Id. "[W]hen a prison's

grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices

if it alerts the prison to the nature of the wrong for which redress is sought.'" Id. (citing

Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  "The primary purpose of a grievance

is to notify the prison of a problem and facilitate its resolution, not to lay groundwork for

litigation." Id. A grievance need not be extremely specific as it need only "'provide enough

information, . . . to allow prison officials to take appropriate responsive measures.'" Id.

(quoting Johnson v. Testman, 380 F.3d 691, 697 (2d. Cir. 2004)).

**IV.   ANALYSIS**

Plaintiff's grievance states

> This grievance is in accordance with the C.C.R. Title 15 3391(d)
> employee conduct, 3021 falsification of records or documents, 3335(a)
> administrative segregation, 3341.5 segregated program housing units (B) &
> (9).
> Appellant is illegally being held as a S.H.U. inmate.  Appellant has
> long been transferred over from S.H.U. to Ad. Seg. Status and has been
> treated as such. (C.S.R.) Denied the 180 day extension that was requested

by the counselor and there is no such charge as (battery on a inmate) on the S.H.U. assessment chart . . . to warrant a new S.H.U. charge.

Everyone else that was Ad. Seg. status, there were transferred out to the Ad. Seg. Building. But Appellant was told to enjoy the yard and now appellant has a broken jaw and a phantom S.H.U. term. Appellant believes that he was placed in this vulnerable position as a continuous act of retaliation set fort by the mental health and medical staff because of grievance and complaints that were filed by appellant. Appellant further believes that all paperwork has been falsified because appellant was suppose to be cut loose the beginning of November 2007 and hasn't been. Appellant is still an illegal hostage.

(ECF No. 1, pp. 23-25.)

Plaintiff then requests "to have all paperwork investigated thoroughly and as soon as possible and all paperwork issued to" him. (Id. at 23.)

Clearly this grievance does not state any, or allude to any, wrong doing by Defendant Lomeli. In fact, it does not state anything about the incident including when it occurred, who was involved, or what happened. Plaintiff merely states that his jaw was broken. He does not state that he was shot or that he was involved in any kind of altercation. He does not name any individuals involved. Then in the action requested section of the complaint, Plaintiff states that he wants the paperwork to be investigated and that he wants copies of it. He does not state that he wants an individual investigated or even what paperwork he would like investigated.

This grievance in no way placed prison officials on notice that there was a problem as it is required to do. Therefore, the Court finds that Plaintiff did not exhaust his available administrative remedies.

## V.   CONCLUSION AND RECOMMENDATION

Therefore, the Court HEREBY RECOMMENDS that Defendant's Motion to Dismiss for failure to exhaust be GRANTED.

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: ___July 11, 2011___

UNITED STATES MAGISTRATE JUDGE